## LEONARD *v.* HORTON.

---

PATENTS; APPEAL AND ERROR; INTERFERENCE; CLAIMS AND SPECIFICATIONS.

1. This court will not consider, at the instance of the appellee, and in support of the decision in an interference proceeding, the fact that the record does not contain the original application of the appellant, the date of which is merely recited in the patent issued thereon, where the question was not raised before the tribunals of the Patent Office, which had all the records before them.

2. Where a drawing accompanying the specifications, but intended to be diagrammatic merely, is inconsistent with the intention expressed in the language of the claim, it will not be considered as part of the description in aid of the right to make the claim.

3. Claims of one of the parties to an interference will not be so construed, at the instance of the other party, as to read into them limitations in order to exclude a device that is within their broad meaning.

4. The inventor of a particular device who chooses to make claims broader than necessary to cover the same cannot ask, when thrown in inter- ference with another inventor in the same general field, that they be limited to correspond with his own particular structure.

5. The question of patentability is not involved in an interference.

No. 824. Patent Appeals. Submitted January 14, 1913. Decided Febru- ary 3, 1913.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.

*Affirmed in part and reversed in part.*

The facts are stated in the opinion.

*Mr. Clifton V. Edwards* and *Mr. Lawrence K. Sager* for the appellant.

*Mr. Edwin B. H. Tower, Jr.,* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The invention of the issue involved in this interference is a device for starting electrically operated motors of the type known as "compound starters," which are arranged to control the resistance both in the armature circuit and in the shunt field circuit of the motor. The interference was declared in seven counts, but has been dissolved as to one of them, leaving the fol- lowing six counts, renumbered to correspond:

"1. In combination, a movable member, a resistance control- led thereby, a second movable member, a resistance controlled by the latter member, and means rendering the former member ineffective in controlling the resistance thereof while the latter member occupies predetermined positions.

"2. In combination, a movable member, a resistance controlled thereby, a second movable member, a resistance controlled by the latter member, means operatively connecting said members, said latter member being movable with the former member in one direction and the former member being movable independently of the latter member in the opposite direction, and a magnet for retaining the latter member in a predetermined position.

"3. In combination, a movable member, resistance controlled thereby, a second movable member, a resistance controlled by the latter member, means operatively connecting said members, said latter member being movable with the former member in one direction, and the former member being movable independently of the latter member in the opposite direction, means tending to keep the latter member in the initial position thereof, and a magnet for holding the latter member in a predetermined position.

"4. In combination, a movable member, a resistance controlled thereby, a second movable member, a resistance controlled by the latter member, means operatively connecting said members to cause the latter member to move with the former member in one direction, the former member being movable independently of the latter member in the opposite direction, said latter member being adapted to decrease the resistance controlled thereby when it is moved with the former member, and the former member being adapted to control its correlated resistance when it is moved independently of the latter member.

"5. In combination, a movable member, a resistance controlled thereby, a second movable member, a resistance controlled thereby, means for connecting said members to cause the same to move in one direction together, but permitting said first movable member to move in an opposite direction independently of the second member, and means for automatically returning both members to their initial position upon the release of said second member.

"6. In combination, a movable member, a resistance controlled thereby, a second movable member, a resistance controlled thereby, means for connecting said members to cause

the same to move in one direction together, but permitting said first movable member to move in an opposite direction independently of the second member, a retaining magnet for holding the second member in a predetermined position, and means for automatically returning both members to their initial position upon the release of said second member."

Albert J. Horton is the grantee in a patent issued June 20, 1905, upon application filed November 2, 1904. Harry Ward Leonard's present application was filed July 22, 1909, but is connected through renewals and divisions with an original application filed July 11, 1903.

A preliminary question is urged by Horton in support of the decision. It is this: That the record does not contain the original application of Leonard, and the recital of its date in the patent issued thereon June 4, 1907, is not sufficient to carry his date of conception back of Horton's. We do not regard the question as before us on this appeal. The records of the Office were before the tribunals thereof. The date and the descriptions of the parent application were considered by them, and this question was not raised. For that reason, doubtless, it was thought unnecessary to incorporate the application in the transcript. If the question were now entertained, justice would require that the record be amended.

No testimony was taken on the question of actual priority, and the single question litigated is the right of Leonard to make the claims of the issue. This has been considered in all the ways provided by the Office rules of practice. The Primary Examiner decided that Leonard had the right to make each of the claims of the issue. The Examiner of Interferences decided that Leonard had the right to make claims 2, 3, 4, 5, and 6, but not claim 1. Both parties appealed to the Examiners-in-Chief, who affirmed the decision. Both parties again appealed. The Commissioner affirmed the decision as to count 1 and reversed it as to counts 2, 3, 4, 5, and 6; awarding priority to Horton as to every count involved. In Horton's device two sets of contracts are concentrically arranged, one for the armature, the other for the field resistance. Two arms pivoted upon

the same support are arranged to pass over said contacts. Engaging projections cause the said arms to move together in one direction over their respective contacts. During this joint movement in one direction the armature resistance is gradually cut out, and the field resistance is rendered ineffective by means of a contact sector which short-circuits said resistance until the arms have been moved a sufficient distance to cut out all of the armature resistance. When in that position the arm for the armature resistance is attracted by a magnet, and held there as long as there is voltage on the line. The field resistance arm can then be moved in the opposite direction to insert resistance in the field magnet circuit. Leonard's device also provides the two sets of resistances. The contacts for the armature resistance are arranged on the segment of a circle; those for the field resistance are circularly arranged. They are not concentric, as in Horton's device. Each has a contact arm. The arm for the field resistance is carried on a shaft operated by a hand wheel. It is so arranged that a lever may engage with an extension on the arm governing the armature resistance. When the arm of the armature resistance is in its initial position, the arm of the field resistance is firmly locked by said engagement. When the arm of the armature resistance is carried across the contacts, it is caught by a magnet, and the arm of the field resistance is movable in the opposite direction from that in which it had moved when engaged with the other. Count 1, which is a claim taken from Horton's patent, is framed to read directly on his structure, in which the field resistance arm is ineffective, while the armature arm occupies any position, from the initial to the full running position. In Leonard's structure, the field resistance arm is ineffective only when the armature resistance arm is in the initial or starting position.

It seems to be apparent from Leonard's description, as quoted in the decision of the Examiner of Interferences, that his purpose was to render the field resistance arm immovable and ineffective only when the armature resistance arm is in its initial position. It is argued, however, that the drawing must be regarded as part and parcel of the description in aid of the

right to make the claim, and that it shows that the field resistance arm is also ineffective when the armature resistance arm is first moved to start the motor. This view controlled the Primary Examiner's decision on the preliminary motion. That the ineffectiveness of the field resistance arm, not only when the armature resistance arm is in its initial position, but also when first moved to start the motor, may be inferred from the drawing, may be true. But we agree with the tribunals of the Office, each of which concurs therein, that this is accidental in a drawing intended to be diagrammatic merely, and inconsistent with the intention expressed in the language of the specifications.

This brings us to the consideration of Leonard's right to make the remaining claims,—a point on which the assistant Commissioner disagrees with the lower tribunals and the Primary Examiner. The question turns upon the meaning of these words contained substantially in each count: "Means operatively connecting said members (the respective resistance arms), said latter member being movable with the former member in one direction and the former member being movable independently of the latter member in the opposite direction."

It is clear from the specifications, drawings, and exhibits that these broad claims read on Leonard's structure. He shows means for connecting the said arms and causing them to move in one direction together, and then permitting the former member to move in an opposite direction independently of the latter one. The contention of Horton that the claim must be construed to cover his structure only is completely answered by the Examiner of Interferences. It requires reading a limitation into the claims, not warranted by any rules of construction. It is true that in Horton's device the armature resistance arm is movable in one direction with the field resistance arm, from starting point to no-resistance position, and then, and not until then, the field resistance arm is capable of movement in the opposite direction,—that is, towards the starting point, independently of the armature resistance arm. In Leonard's device the field resistance arm is movable with the armature resistance arm, by the connecting means, from any particular resistance

to no-resistance position, and at the same time is movable independently to a higher resistance, which is in the opposite direction to its first travel.

To construe the claims as calling for a sequence of operations, as shown in Horton's device, which the Commissioner held to be the true one, is to read into them limitations in order to exclude the device of Leonard that is within their broad meaning. It is probable that some of Horton's claims, not in interference, are drawn with limitations distinguishing his device specifically from Leonard's. But into this we need not pause to inquire. Where the inventor of a particular device chooses to make claims broader than necessary to cover the same, he cannot, when thrown in interference with another inventor in the same general field, ask that they be limited to correspond with his own particular structure. The reasoning of the Examiner of Interferences is supported by authorities cited, and is satisfactory to us.

The patent to Ash is referred to by the Commissioner as showing the prior act, and it is argued that the claims as construed by the lower tribunals are not patentable over the prior act, but, to make them patentable, must be given the meaning contended for by Horton. Ash antedates both Leonard and Horton; but he shows one resistance only. He has two levers or arms acting upon the same resistance, while they have two separate resistances of different character. A thing which they undertook to accomplish was to avoid using the same resistance for starting the motor and varying its speed; and each count of the issue specifically recites these two distinct resistances.

The question of patentability is not involved, and there is no occasion to pursue the subject.

The decision as to count 1 is affirmed, and as to the remaining counts is reversed, and the priority of Horton is declared as to count 1, and that of Leonard as to the remaining counts of the issue. The clerk will certify this decision to the Commissioner of Patents.    *Affirmed in part; reversed in part.*

Mr. Justice BARNARD, of the Supreme Court of the District, sat with the court in the hearing and determination of this appeal, in the place of Mr. Justice VAN ORSDEL.